**Rita Hooper DALE, a former incompetent person, Plaintiff-Appellee-Appellant,**

v.

**Demarest J. HAHN, individually and as committee of the person and property of Rita Hooper Dale, et al., Defendants-Appellants-Appellees.**

No. 1081, 1098, Dockets 73–1795, 73–1934.

United States Court of Appeals, Second Circuit.

Argued June 28, 1973.

Decided Sept. 24, 1973.

Rehearing Denied Jan. 9, 1974.

David H. Berman, Asst. Atty. Gen., New York City (Louis J. Lefkowitz, Atty. Gen., and Irving Galt, Asst. Atty. Gen., New York City, on the brief), for defendants-appellants-appellees.

Jonathan A. Weiss, Legal Services for the Elderly Poor, New York City (Bruce J. Ennis, N.Y. Civil Liberties Union. and Bernard C. Durham, Legal Services for the Elderly Poor, New York City, on the brief), for plaintiff-appellee-appellant.

Before LUMBARD, HAYS and TIMBERS, Circuit Judges.

TIMBERS, Circuit Judge:

These cross-appeals are from an order entered May 7, 1973 in the Southern District of New York, Whitman Knapp, District Judge, which (1) held that the 1962 state court order declaring plaintiff-appellee-appellant Rita Hooper Dale ("appellee") to be incompetent and appointing a committee to manage her affairs was null and void *ab initio*; and (2) directed the return to appellee by defendants-appellants-appellees ("appellants") [1] of the sum of $2,152.35, plus interest from July 24, 1962, representing expenditures, other than payments to the New York State Department of Mental Hygiene, made by the committees from her estate.

The primary issue raised on appeal is whether the district court's finding[2] that appellee had not been adequately notified of the committee-appointment proceeding was clearly erroneous. We hold that it was not. We affirm.

I.

In 1951, appellee was involuntarily committed to a state mental hospital where she remained until 1967.[3] In 1962, allegedly due to appellee's failure to pay the New York State Department of Mental Hygiene for services and treatment provided her, the hospital director filed a petition in the New York Supreme Court, Bronx County, which sought an order declaring appellee incompetent and appointing a committee to manage her affairs.[4] No hearing was held. On July 24, 1962, the petition was granted. Appellant Hahn was appointed as the committee. Upon the court's acceptance of Hahn's resignation in 1966 and the settlement of his account, defendant Pious was appointed as the successor committee pursuant to the same procedure. On April 18, 1967, appellee was discharged from the hospital. She subsequently was declared competent to manage her own affairs.

During the tenure of the committees, almost $8,000 of appellee's assets was expended, of which $5,686.16 was paid to the Department of Mental Hygiene. The remainder went for expenses which appellee allegedly would not have incurred had she been permitted to manage her own affairs.

1. The named defendants included Demarest J. Hahn, who served as the committee to manage appellee's affairs from July 24, 1962 until his resignation on October 13, 1966; Alan D. Miller, M.D., Commissioner of the New York State Department of Mental Hygiene; and Lawrence P. Roberts, M.D., Director of Harlem Valley State Hospital. A fourth defendant, Edward Pious, who served as the successor committee following Hahn's resignation, after the final settlement of his account was dropped as a defendant pursuant to a stipulation approved by Judge Cooper on February 10, 1970.

2. This finding was made in open court at the conclusion of the trial on April 9, 1973, at which time decision was reserved on the consequences of this finding. A memorandum and order was filed on May 7, 1973.

3. We assume familiarity with prior proceedings and the background of the case as outlined in Judge Cooper's opinion of March 26, 1970, 311 F.Supp. 1293 (S.D.N.Y.1970), and our opinion of February 19, 1971, 440 F.2d 633 (2 Cir. 1971), reversing in part and remanding.

4. The petition was filed and processed pursuant to the procedures outlined in what is now N.Y. Mental Hygiene Law § 102 (McKinney 1971) (formerly N.Y. CPLR § 1374).

In 1969, appellee commenced in the Southern District of New York a class action challenging the constitutionality of N.Y. Mental Hygiene Law § 102 (McKinney 1971) on the ground that its provision for the appointment of a committee to manage the affairs of an incompetent, without first affording to the incompetent notice of the proceedings and an opportunity to be heard in opposition, violated the due process clause of the Fourteenth Amendment. Declaratory and injunctive relief was sought, together with the return of all sums expended by the allegedly unlawful committees.[5] On March 26, 1970, Judge Cooper denied the motion to convene a three-judge court and dismissed the complaint. 311 F.Supp. 1293 (S.D.N.Y. 1970). On appeal, we affirmed the denial of the motion for a three-judge court and the determination that the class action was inappropriate; but we reversed the dismissal of the complaint and remanded for the purpose, inter alia, of determining the adequacy of the notice given to appellee of the committee-appointment proceedings. 440 F.2d 633 (2 Cir. 1971).

On remand, Judge Knapp held the notice to have been inadequate. In an oral finding of fact made at the conclusion of the trial, he found that the testimony of appellee and John C. Miller (the state's process server), both of whom were credited as "truthful" witnesses, indicated either that appellee had not been served with notice of the proceeding at all, or that "it was handed to her in circumstances where its meaning did not get through to her."[6] Either of these situations, the court held, would satisfy appellee's burden of establishing that she was not provided with adequate notice. In its written memorandum and order that followed, the court held that our 1971 decision precluded appellee from asserting that she could recover sums paid to the Department of Mental Hygiene by the first committee, and further that she "has offered no reason why the amounts paid to the hospital by her second committee should be treated any differently".[7] That order is now challenged on appeal by both sides. Appellants contend that the finding of inadequate notice was erroneous. Appellee objects to the limitation of recovery to payments other than those to the Department of Mental Hygiene.

## II.

As stated above, the district court did not determine whether appellee was or was not physically served with notice of the committee-appointment proceeding. Rather, the finding was to the effect that, assuming arguendo that appellee actually had been served, under the circumstances of her incompetency such notice was inadequate.

The premise underlying that finding is that there may be situations in which physical service of process will not constitute adequate notice. We are satisfied that such a premise is supported by the cases.

\* \* \*

Even without the doctor's testimony, it did seem to me that she had a fairly accurate memory of what went on in those days, especially anything related to that machine . . . .

Having observed her, I am satisfied that if she had been in anything like a normal condition, had this last paragraph on the third page of this exhibit been read to her, there would have been a reaction which would have made it perfectly apparent that she did not like what was going on."

---

5. Jurisdiction was invoked pursuant to the Civil Rights Act, 42 U.S.C. § 1983 (1970), and its jurisdictional implementation, 28 U.S.C. § 1343 (1970). The request for declaratory relief was premised on the Declaratory Judgments Act, 28 U.S.C. §§ 2201–02 (1970).

6. This finding was based in large part on the judge's view of appellee's likely reaction to adequate notice:

"Attached to the [process affidavit] is a statement indicating that the New York Life Insurance Company is about to turn over the machine belonging to the [appellee] to the hospital. The [process server] apparently did not call that to [appellee's] attention.

7. The court also denied appellee's request to have all records of the committee-appointment proceeding expunged.

The landmark case dealing with the question of constitutional sufficiency of notice, Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950), while distinguishable on its facts, nevertheless does have a direct bearing here. In *Mullane,* the Court held that notice by publication was inadequate to inform known beneficiaries of a common trust fund of the proposed judicial settlement of certain accounts by the trustee. In so holding, the Court stated the critical due process requirement as follows:

> "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections . . . .
>
> [W]hen notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the [person] might reasonably adopt to accomplish it . . . ." 339 U.S. at 314–15 (citations omitted).

The New York state courts likewise have recognized the importance of the particular circumstances of a case in assessing the constitutional adequacy of notice. One court summarized the rule as permitting a finding of inadequacy where "the circumstances [are] such as to show that the [recipient] did not come into actual possession of the papers and that his attention was not drawn to their character, or that he had not willfully ignored them and refused to ascertain their nature for the purpose of evading service." Heller v. Levinson, 166 App.Div. 673, 674, 152 N.Y.S. 35, 36

(1st Dept. 1915). See In re Barbara, 14 Misc.2d 223, 226–27, 180 N.Y.S.2d 924, 928 (Sup.Ct., Tioga Co., 1958), aff'd, 7 App.Div.2d 340, 183 N.Y.S.2d 147 (3d Dept. 1959). This rule has been held to require the vacating of an order where, despite undisputed personal written notice of an impending judgment of foreclosure, the recipient's "advanced age and lack of experience and understanding" were such as to lull her "into a false state of security". Brown v. Giesecke, 40 App.Div.2d 1009, 338 N.Y.S.2d 967, 969 (2d Dept. 1972). See also In re Coates, 9 N.Y.2d 242, 251–53, 173 N.E. 2d 797, 802–03, 213 N.Y.S.2d 74, 81–82 (1961), appeal dismissed sub nom. Coates v. Walters, 368 U.S. 34 (1961).

■ The decision below was in accord with those principles.[8] The state was not serving notice on an ordinary party in a civil suit; on the contrary, it was dealing with a person committed to a state mental hospital as an incompetent —a fact necessarily known to the state in light of the very nature of the proceeding. The district court found that the notice given was not reasonably calculated under the circumstances to apprise appellee of the fact that a substantial interest was involved. We hold that finding to have been permissible as a matter of law, and on the record before us it was not clearly erroneous.

### III.

Appellee's cross-appeal raises the propriety of limiting the measure of damages to all expenditures incurred by the committees with the exception of those payments made to the Department of Mental Hygiene. In our earlier decision, we stated:

> "[I]f plaintiff succeeds in her challenge to the appointment of her com-

---

8. Chaloner v. Sherman, 242 U.S. 455 (1917), does not compel a different conclusion. There, damages were sought by a person adjudged to be an incompetent for the withholding of his property by a committee appointed under New York law. Plaintiff alleged that the applicable statute was unconstitutional because there was no express requirement of notice and an opportunity to be

heard at the committee-appointment proceeding. The Supreme Court's affirmance of the order directing a verdict in favor of the defendant committee was based on the finding that plaintiff had received constitutionally adequate notice at every stage and that the failure to oppose the petition was therefore not open to collateral attack. 242 U.S. at 461.

mittees, she will be entitled to reimbursement from defendants for the expenses charged against her assets through the operation of the committees. However, as to the amounts paid to the Department of Mental Hygiene for services rendered by that Department, recovery should be disallowed to avoid multiple litigation. Plaintiff was liable for these latter amounts irrespective of the appointment of the committees; and the accounting in the state courts, at which plaintiff was fully represented, is *res judicata* as to these amounts." 440 F.2d at 638 n. 8.

The decision of the district court that was the subject of that appeal was rendered subsequent to the settlement of the first committee's account and prior to the settlement of the second committee's account (effected in the Supreme Court, Bronx County, on June 8, 1970). Judge Knapp read our opinion as "conclusively establish[ing] that [appellee] may not recover the money paid to the hospital by her first committee". He further held that appellee had failed to demonstrate why the amounts paid to the Department by the second committee should be treated otherwise.

Appellee contends that the district court improperly felt itself constrained so to limit the appropriate relief. She points particularly to our order of April 5, 1971 denying appellant's petition for rehearing in which we said that "the new claim that the State court accounting, which was completed subsequent to the proceedings appealed from, is now *res judicata* must first be resolved below upon the enlarged record." She argues, in other words, that the hospital should be forced to sue her for the amounts allegedly due—a proceeding the district court noted she "would welcome for the purpose of litigating whether the hospital in fact gave 'treatment' to her."

In our prior decision we held that any ultimate judgment against appellee's first committee was not to include payments made to the Department of Mental Hygiene for services rendered by that Department. We find no basis for re-opening that question.[9] The only issue properly before us, therefore, is whether the district court, in limiting the extent of recovery against the second committee, erred in reaching a conclusion consistent with that arrived at with respect to the first committee.

 The purpose of a final accounting under N.Y. Mental Hygiene Law § 113 (McKinney 1971) is to determine the propriety of the actions of the committee. In re Bendheim, 187 Misc. 372, 374, 66 N.Y.S.2d 445, 447 (Sup.Ct., Orange Co., 1946). The accounting proceeding, however, may not inquire into the specific charges of the Department of Mental Hygiene for services rendered to a patient at a state mental hospital. In re Asker, 284 App.Div. 712, 716, 134 N.Y.S.2d 685, 689 (4th Dept. 1954), aff'd, 309 N.Y. 983, 132 N.E.2d 985, 134 N.Y.S.2d 685 (1956). Protection to a patient who alleges an overcharge, or that a charge was for services not actually rendered, is provided for in N.Y. Mental Hygiene Law § 43.11 (McKinney Supp.1972) (formerly N.Y. Mental Hygiene Law § 40), which authorizes an action *brought by the patient* in which the relevant allegations can be made. Within that framework, it seems proper to give conclusive effect to the determination made in the accounting proceeding for purposes of the present action. We therefore agree that the measure of recovery should be limited to items found in that accounting to be other than those charged by the Department of Mental Hygiene for services rendered, subject to appellee's continuing right to challenge the Department's charges in a state proceeding pursuant to Section 43.11.

---

9. The quoted statement in the order denying the petition for rehearing undoubtedly is of no effect in regard to the first committee, the point being limited both in terms and in common sense to the post-judgment settlement of the second committee's account.

In short, we hold that the district court's conclusion that the state accounting of the second committee was *res judicata* was in accord with both state law and the considerations that led us to reach a like conclusion with respect to the first committee.

## IV.

A final question concerns the State's contention that the order directing payment to appellee is improper under the Eleventh Amendment on the ground that the defendant state officials are immune from suit. The short answer to that claim is that it is foreclosed by our prior decision. 440 F.2d at 637–38. In the absence of any compelling reason to depart from that position, we hold that our earlier decision on the issue of sovereign immunity is the law of the case. Wharton v. Hirsch, 348 F.2d 906, 907 (2 Cir. 1965).

Affirmed.

